IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,   )<br>)<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>R3 GOVERNMENT SOLUTIONS, LLC,   )<br>)<br>Defendant.   )<br>) | CIVIL ACTION NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

In this action, the United States Equal Employment Opportunity Commission brings claims against R3 Government Solutions, LLC, a federal contractor, for violations of the Age Discrimination in Employment Act of 1967, as amended (ADEA), Title VII of the Civil Rights Act of 1964, as amended (Title VII), and Title I of the Civil Rights Act of 1991.  As alleged with greater particularity below, EEOC files this action to correct unlawful employment practices, to obtain injunctive relief necessary to bring Defendant into compliance with federal anti-discrimination laws, and to provide appropriate relief to Charging Party Alicia Levy.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 29

U.S.C. § 626(b), which incorporates by reference Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 216(c) and 217.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

## PARTIES

3. The United States Equal Employment Opportunity Commission (EEOC or the Commission) is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1). Likewise, EEOC is charged with the administration, interpretation and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. R3 Government Solutions, LLC (Defendant or R3), is a Virginia corporation and has at all relevant times been doing business in the State of Virginia and the County of Arlington.

5. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h) and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

6. At all relevant times, Defendant had at least 15 employees.

7. At all relevant times, Defendant had at least 20 employees.

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Alicia Levy filed an EEOC charge against Defendant alleging violations of the ADEA and Title VII.

9. On June 22, 2021, EEOC issued to Defendant a Letter of Determination finding that Defendant violated the ADEA and Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Defendant to provide Defendant with the opportunity to remedy the findings in the Letter of Determination.

11. EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On January 4, 2022, EEOC issued to Defendant a Notice of Failure of Conciliation.

13. All conditions precedent to the initiation of this lawsuit were fulfilled.

STATEMENT OF CLAIMS

14. Defendant began operating in 2009. Since at least 2012, Defendant has been headquartered in Arlington, Virginia.

15. Defendant is a federal contractor that provides human capital and consulting services to the federal government, including identifying, recruiting, and hiring people for employment positions made available through government contracts.

16. Defendant contracts with agencies of the federal government on projects which receive federal funding.

17. According to Defendant, its business model is to identify, recruit, and hire persons to work for Defendant in positions within the federal government where Defendant is the contractor or subcontractor to another business contracting with the federal government.

18. Before Defendant hired Alicia Levy, Defendant did not employ an in-house recruiter.

19. Before Defendant hired Ms. Levy, the person at Defendant primarily tasked with identifying and recruiting persons for employment made available through government contracts was Kristin Berry, who was then, and still is, the company's president.

20. In June 2013, an R3 executive who worked for R3 through at least January 2017 authored an article entitled *Acquiring Young Talent: Marketing a Must* that was published by IPMA-HR, a public sector human resources organization. In the article, the author criticized the federal government's recruiting and hiring practices, which he said are "not going to allow your agency to compete successfully for the young talent that you are trying to attract." In the article, the author proposed various methods to attract and interest candidates who he called "Millennials," and referred to "the goal" of "hiring the desired Millennial…." The article identifies the author as R3's Senior Vice President and leader of the company's human capital consulting practice.

21. On May 5, 2016, Defendant sent Ms. Levy a written offer of employment by email. The offer letter was issued by R3's then-Chairman and COO, Glenn Hartung.

22. Before sending Ms. Levy the employment offer described in Paragraph 21, Defendant interviewed her by telephone.

23. On May 6, 2016, Ms. Levy accepted Defendant's offer of employment.

24. After Ms. Levy filed a Charge of Discrimination with EEOC and the Charge was provided to Defendant, R3 submitted to EEOC a Position Statement dated June 22, 2017.

25. The Position Statement described in Paragraph 24 was verified by R3's president Kristin Berry.

26. In the verified Position Statement described in Paragraphs 24-25, Defendant said that it hired Ms. Levy to support R3's Human Capital Management activities, including providing recruiter support.

27. While she was employed at R3, Ms. Levy reported to the company president Kristin Berry.

28. In her role at R3, Ms. Levy identified and preliminarily screened people for positions at federal government agencies as directed by Kristin Berry. According to Defendant, Ms. Levy then presented potential candidates to Kristin Berry for consideration.

29. Ms. Levy was an excellent employee and her job performance was above satisfactory.

30. During her employment with R3, Ms. Levy observed practices that restricted employment opportunities based on age, race, national origin, and other protected bases. For example, Kristin Berry said she needed to know whether a candidate was young enough to be a good fit for a position, told Ms. Levy to ask candidates what year they graduated from college as a way of determining their age, and said that some candidates were too old or too senior "in age" for certain positions. Ms. Levy observed practices that excluded persons who had worked more than a specified number of years, restricted opportunities based on college graduation year, and otherwise rejected persons because of age, including because they were older than persons to whom they may report in certain positions. Ms. Levy also observed that Black candidates were put through a different and more strenuous process than other candidates and that R3 also imposed restrictive recruiting and selection processes based on national origin.

31. Ms. Levy engaged in protected activity when she opposed R3's recruiting and hiring practices. The opposition included but was not limited to presenting candidates regardless

of age or college graduation date, objecting to practices that disadvantaged persons because of race and/or national origin, and telling Kristin Berry that she would not participate in the company's discriminatory hiring practices.

32. After Ms. Levy said that she would not participate in R3's discriminatory hiring practices, Kristin Berry told Ms. Levy that she should do as directed because, as a Black single mother with no college degree, nobody else would hire her or pay her what she was earning at R3. Kristin Berry made clear to Ms. Levy that she should disqualify candidates as directed and not raise the issue further.

33. Before taking materially adverse action against Ms. Levy, Kristin Berry knew Ms. Levy opposed Defendant's recruiting and hiring practices; presented candidates who were older than the people R3 wanted to recruit and hire and was upset because Kristin Berry would not consider those candidates; and believed R3 was engaged in practices that constituted age discrimination.

34. After Ms. Levy engaged in protected activity, Kristin Berry had discussions with a consultant during which Kristin Berry claimed that Ms. Levy's performance was deficient.

35. After Ms. Levy engaged in protected activity, Defendant took materially adverse action against her, including threatening to reduce or eliminate her flexible work schedule and telework arrangement; excluding her from direct recruiting responsibilities; restricting communication with her supervisor; telling her that the company was conducting a recruitment "study" to cover up their plans to discipline or replace her; planning to put her on a performance improvement plan or redefine her position so that she was no longer qualified for her own job; and firing her.

36. R3 subjected Ms. Levy to disparate treatment because of her race, Black, including using her race as a means of coercing her to comply with discriminatory directives, as described above, and firing her.  For example, when Ms. Levy objected to R3's practices, Kristin Berry replied that she should do as she was told because, as a Black single mother without a college education, she should be grateful for the job and would not find comparable work elsewhere.  Kristin Berry made other remarks to Ms. Levy suggesting that Ms. Levy was of little or no value in the marketplace and engaged in other conduct from which a reasonable juror could conclude that R3 took adverse action against Ms. Levy because of race.

37. On February 6, 2017, Kristin Berry told Ms. Levy that she was fired.

38. On February 6, 2017, Kristin Berry told Ms. Levy that she was being laid off because of changes in government administration that would cause a lull in R3's business activities.

39. Kristin Berry did not tell Ms. Levy that she was being fired because her performance was deficient or that she was being fired for cause.

40. The reasons why Kristin Berry said R3 was firing Ms. Levy were a pretext for retaliation and discrimination.

41. R3 did not fire Ms. Levy because of a layoff.

42. R3 did not fire Ms. Levy because of a lull in business, nor did it fire her because the company had no continuing need for someone to perform recruiting functions.

43. R3 began searching for someone to replace Ms. Levy while she was still employed.  After firing Ms. Levy, Defendant expressed frustration that it had an urgent need to hire a recruiter but could not find anyone suitable to replace Ms. Levy.

44. By at least March 2, 2017, Kristin Berry knew that Ms. Levy had filed or asserted Title VII claims.

45. After Ms. Levy engaged in protected activity, including opposing R3's discriminatory practices, asserting or filing Title VII claims, and/or filing an EEOC charge alleging Title VII and ADEA violations, R3 accused her of deficient job performance; made hostile or false statements about her abilities, character, and/or credibility; claimed that she was fired for poor job performance; and otherwise engaged in unlawful retaliation.

46. After Defendant fired Ms. Levy, the company continued to employ persons (as employees or contractors) to support R3's Human Capital Management activities, to recruit or provide recruiting support, and to perform human resources administrative functions.

47. The recruiting and other functions that R3 has hired or retained persons to perform, as described in Paragraph 46, were functions that Ms. Levy performed while she was employed by Defendant.

## COUNT I: ADEA VIOLATIONS

48. The EEOC reasserts, as if fully set forth herein, the allegations in Paragraphs 1-5 and 7-47.

49. Alicia Levy was qualified for the job that R3 hired her to perform, as set forth above. During the course of her employment Ms. Levy engaged in protected activity as defined by the ADEA. After Ms. Levy engaged in protected activity, R3 took materially adverse action against her. The alleged reasons asserted for R3's conduct constitute a pretext, and additional evidence supports the conclusion that R3 violated the ADEA by engaging in unlawful retaliation.

50. Defendant violated the ADEA when it retaliated against Ms. Levy because she opposed practices made unlawful under the Act and/or because she made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or litigation under the Act.

51. The effect of the practices complained of above has been to deprive Ms. Levy of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity.

52. As a result of the violations described above, Ms. Levy was deprived of wages and employment benefits and suffered other harm that is compensable under the ADEA.

53. Defendant's violations of the ADEA were willful, as defined by the Act.

### COUNT II: TITLE VII VIOLATIONS

54. The EEOC reasserts, as if fully set forth herein, the allegations in Paragraphs 1-6 and 8-47.

55. Alicia Levy was qualified for the job that R3 hired her to perform, as set forth above. Defendant subjected Ms. Levy to disparate treatment because of her race, Black, and fired Ms. Levy for pretextual reasons. Additional facts support the conclusion that R3 violated Title VII when it discriminated against Ms. Levy because of race.

56. During the course of her employment, Ms. Levy engaged in protected activity as defined by Title VII. After Ms. Levy engaged in protected activity, R3 took materially adverse action against her. The alleged reasons asserted for R3's conduct constitute a pretext, and additional facts support the conclusion that R3 violated Title VII by engaging in unlawful retaliation.

57. Defendant violated Title VII when it retaliated against Ms. Levy because she opposed practices made unlawful under the Act and/or because she made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or litigation under the Act.

58. The effect of the practices complained of above has been to deprive Ms. Levy of equal employment opportunities and otherwise adversely affect her status as an employee because of her race and protected activity.

59. As a result of the violations described above, Ms. Levy was deprived of wages and employment benefits and suffered other harm that is compensable under Title VII.

60. The unlawful employment practices complained of above were intentional.

61. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Levy.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, executives, managers, agents, servants, employees, and all persons in active concert or participation with it, from: engaging in practices which dissuade, deter, or chill persons from enjoying or exercising rights secured by Title VII or the ADEA, or which punish or retaliate against them for doing so; violating Title VII and/or the ADEA as set forth above.

B. Order Defendant to institute and carry out policies, practices, and programs which eradicate the effects of its unlawful employment practices.

C. Order Defendant to make whole Alicia Levy by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.  Order Defendant to make whole Alicia Levy by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to out-of-pocket expenses, in amounts to be determined at trial.

E.  Order Defendant to make whole Alicia Levy by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain and suffering, in amounts to be determined at trial.

F.  Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.  Order Defendant to pay liquidated damages, in amounts to be determined at trial.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

I.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN Y. REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

KATE NORTHRUP
Supervisory Trial Attorney

_____/s/_____
MARIA LUISA MOROCCO
Supervisory Trial Attorney
Va. Bar ID 94043
Attorney for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M. St., NE
Suite 4NW02F
Washington, DC 20507
Phone: (202) 921-2795
Fax: (202) 827-2349
maria.morocco@eeoc.gov

SABRINA L. BROWN
Trial Attorney
Ohio Bar No. 0096700
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
Phone: (216) 306-1116
Fax: (216) 522-7395
sabrina.brown@eeoc.gov